HOMER S. WARREN AND CHARLOTTE V. H. WARREN, ADMINISTRATORS, OF THE ESTATE OF B. T. VAN HOUSEN, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. C. V. H. WARREN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49319, 50634. Promulgated January 15, 1935.

*Leo M. Hirschtritt, Esq.*, for the petitioners.
*Isadore Graff, Esq.*, for the respondent.

OPINION.

McMahon: These are proceedings, duly consolidated for hearing and other disposition, for the redetermination of the liability of the petitioners, as transferees, for the income and profits taxes owing

from the Steuben County Wine Co. for the year 1919, determined by the respondent to be $58,633.95, plus interest.

The petitioners allege that they are not liable as transferees; that the tax as assessed against the Steuben County Wine Co. is incorrect in that the assessment was made without the benefit of sections 327 and 328 of the Revenue Act of 1918; and that the assessment against the Steuben County Wine Co. was made after the legal date for such assessment and no legal waiver was on file.

In his amended answer in each proceeding, the respondent alleged that in *Steuben County Wine Co.*, 14 B. T. A. 746, and by its decision entered on December 19, 1928, the Board found and held that there is a deficiency of $58,633.95 against the Steuben County Wine Co. for the year 1919, that respondent duly and regularly assessed additional Federal income tax in such amount against the Steuben County Wine Co. for the calendar year 1919; that such assessment has not been paid; that on or about December 30, 1922, the assets of the Steuben County Wine Co. were distributed to the stockholders of the company in liquidation; that ever since that time the Steuben County Wine Co. has been insolvent and unable to meet its liabilities, including its tax liability for the year 1919; that the petitioner was a stockholder in the Steuben County Wine Co. at the time of such distribution, and received from the company as a stockholder, and not as a bona fide purchaser or creditor for value, assets of such company having a value of at least $58,633.95; and that as a result of this distribution the petitioner became liable within the meaning of section 280 of the Revenue Act of 1926 for the entire amount of the additional tax assessed against the Steuben County Wine Co. for the year 1919, plus interest as provided by law. The respondent then further alleged that the prior decision of the Board determining the additional tax liability of the Steuben County Wine Co. for the year 1919 (*Steuben County Wine Co., supra*) is final and binding upon the petitioner.

In the reply in each docket it is denied that the petitioners became liable as transferees within the meaning of section 280 of the Revenue Act of 1926. However, in the reply in each docket it is admitted that the prior decision of the Board determining the additional tax liability of the Steuben County Wine Co. to be $58,633.95 is final and binding upon the petitioners and that they are precluded from raising such issues or any other issues affecting the tax liability of the Steuben County Wine Co. At the hearing the petitioners specifically waived the question of the statute of limitations as to the transferor's liability. The petitioners do not claim that assessment and collection of their liabilities as transferees are barred by the statute of limitations.

The parties entered into the following stipulation:

Steuben County Wine Company was incorporated in 1885, under the laws of the State of Illinois, and had its principal office at Chicago, Illinois. Prior to the advent of prohibition, said company was engaged in the business of selling wines and liquors. It ceased doing business in the latter part of June, 1919, due to the adoption of national prohibition.

On or about May 15, 1920, Steuben County Wine Company filed a corporation income tax return for the year 1919, which return disclosed a tax liability of $25,800.88, and which tax liability was duly assessed and paid.

On or about February 10, 1925, an income and profits tax waiver was filed whereby the statutory period for making an additional assessment against Steuben County Wine Company was extended to December 31, 1925, except said waiver provided that if a notice of deficiency in tax is sent to said company before December 31, 1925 and an appeal therefrom filed with the United States Board of Tax Appeals, then said date for making additional assessment is extended by the number of days between the date of mailing of said notice of deficiency and the date of final decision by said Board.

On November 19, 1925, the Commissioner of Internal Revenue mailed a notice of deficiency to Steuben County Wine Company in which said company was notified of an additional tax liability for the year 1919 in the amount of $58,633.95.

On January 16, 1926, said company filed a petition with the United States Board of Tax Appeals appealing from the determination of the Commissioner of Internal Revenue as set forth in said deficiency notice, which petition was docketed as No. 11035.

On July 19, 1928, a hearing of said appeal was had before a Division of the Board at Chicago, Illinois. On December 17, 1928, the Board promulgated its findings of fact and opinion (reported in 14 B. T. A. 746). On December 19, 1928, the Board entered an Order of Redetermination in which it was ordered and decided that there was a deficiency due from the Steuben County Wine Company of $58,633.95, for the year 1919.

In June, 1929, said additional tax, together with interest thereon, in the amount of $11,755.70, or a total sum of $70,389.65, was duly assessed against Steuben County Wine Company. Notice and demand for payment of said tax and interest were duly made by the Collector of Internal Revenue upon said company, but said company failed to pay said tax and interest within the time provided by said notice and demand. Thereupon, in due course, a warrant for distraint was issued by the Collector of Internal Revenue commanding a Deputy Collector to levy upon, by distraint, and to sell so much of the goods, chattels, effects or other property of said company as may be necessary to satisfy the said tax and interest. Due return was made of said warrant by the Deputy Collector, advising the Collector of Internal Revenue that Steuben County Wine Company had no property of any kind or nature upon which to levy for the satisfaction of all or any part of said tax and interest, it having disposed of its property of every nature in 1922 or 1923, and was, therefore, insolvent. At the time said warrant of distraint was served upon Steuben County Wine Company, which was in 1930, said company had no property of any kind or description upon which the Collector of Internal Revenue could levy, for the satisfaction and payment of said tax and interest, and has had no property at any time since the service of said warrant for distraint from which payment of said tax and interest could be satisfied. The Collector of Internal Revenue exhausted every remedy at his command to collect said tax and interest from said Steuben County Wine Company.

On April 21, 1930, the Commissioner of Internal Revenue mailed a formal notice of deficiency to Mrs. C. V. H. Warren and B. T. Van Housen, advising each of them of their liability as transferees of Steuben County Wine Company for the said additional tax and interest theretofore determined and assessed for the year 1919 against Steuben County Wine Company.

At all times prior to May 29, 1922, Steuben County Wine Company had an authorized and outstanding capital stock of 2,000 shares of common stock, of a par value of $100 each, which stock was owned as follows:

> B. T. Van Housen, 1,300 shares.
> Mrs. C. V. H. Warren, 500 shares.
> A. R. Martin, 200 shares.

At all times material to these proceedings, B. T. Van Housen was president of Steuben County Wine Company and A. R. Martin was secretary and treasurer of said company.

On May 29, 1922, A. R. Martin sold his 200 shares of stock of said company to the said company, and the company thereafter retained the same as treasury stock. Thereafter the stock of said company was held as follows:

> B. T. Van Housen, 1,229 shares.
> Mrs. C. V. H. Warren, 500 shares.
> A. R. Martin, 1 share.

The said one share of stock stood in the name of A. R. Martin for qualifying purposes; said share of stock was endorsed in blank and held by B. T. Van Housen.

Pursuant to the resolution of stockholders at the meeting held by them on July 18, 1922, the Secretary of the State of Illinois approved a change in the name of Steuben County Wine Company to Steuben County Company and approved an enlargement of the objects and purposes of the Steuben County Company as provided in said resolution.

Pursuant to the resolution of the stockholders at the meeting held by them on December 23, 1922, the Secretary of the State of Illinois approved an increase in the authorized capital stock of the Steuben County Company from $200,000 to $800,000. No additional stock, however, was actually issued by Steuben County Company and the outstanding capital stock remained as 1,800 shares.

Pursuant to the resolution of the stockholders at the meeting held by them on June 19, 1923, the outstanding capital stock of the Steuben County Company was decreased from 1,800 shares to 100 shares, and was reissued as follows:

> B. T. Van Housen_____ 71 shares.
> Mrs. C. V. H. Warren_____ 28 shares.
> A. R. Martin_____ 1 share.

The one share issued to A. R. Martin was for qualifying purposes. It was endorsed in blank and held by B. T. Van Housen.

The entries in the books of account of Steuben County Wine Company show a distribution in liquidation of all the corporate assets of the company to its then two stockholders, B. T. Van Housen and Mrs. C. V. H. Warren. This distribution in liquidation is shown on the records of the Steuben County Wine Company to have been made on December 30, 1922.

The distributive share of B. T. Van Housen was shown on said records to be 13/18 of the total value of the property and of Mrs. C. V. H. Warren, 5/18 of the total value of the property. The fair market value of the assets of Steuben County Wine Company as of December 30, 1922 was not less than $500,000. If the Board holds that said B. T. Van Housen and Mrs. C. V. H. Warren were the transferees of Steuben County Wine Company, within the meaning of the

Revenue statute, then it is agreed that the value of the assets which each received was 13/18 and 5/18, respectively, of the amount of $500,000.

Pursuant to the resolution of the Board of Directors of Steuben County Company, at a meeting of said Board held on December 29, 1922, Steuben County Company deposited with the Fort Dearborn National Bank of Chicago, United States Liberty Bonds, having a face value of $125,000, as security for the payment of $83,106.76 additional income taxes assessed against Steuben County Wine Company by the Commissioner of Internal Revenue for the year 1918, a claim for abatement of which had been filed by said company. In December, 1923, the Commissioner of Internal Revenue abated all of said additional assessment, except $21,496.33. The latter sum, together with interest thereon in the amount of $3,170.71, or a total of $24,667.04, was paid by the Steuben County Company. On or about December 17, 1923, Steuben County Company, pursuant to the agreement theretofore made between said company and B. T. Van Housen and Mrs. C. V. H. Warren, true copies of which are set forth in the minutes of the Board of Directors held December 29, 1922, and which have been received in evidence, distributed to B. T. Van Housen and Mrs. C. V. H. Warren, 13/18 and 5/18, respectively, of the Liberty Bonds, remaining, or the proceeds thereof after the payment of said taxes for the year 1918. The fair market value of the Liberty Bonds, or the proceeds thereof remaining after payment of said income taxes at said date of distribution was $102,799.66, of which $74,015.78, or 72 per cent, was received by B. T. Van Housen and $28,783.88, or 28 per cent, was received by Mrs. C. V. H. Warren.

The Beacharmar Company was organized July 9, 1923, under the laws of the State of Illinois. Total authorized capital consisted of 5,000 shares of common stock, of a par value of $100 each, which was subscribed to as follows:

B. T. Van Housen _____ 3,189 shares.
Mrs. C. V. H. Warren _____ 1,810 shares.
Robert M. Todd _____ 1 share.

The share of stock issued to Robert M. Todd was for qualifying purposes. The original stock certificates were issued to said subscribing stockholders on November 24, 1924.

The entries on the books of account of the Beacharmar Company show that the said 3,189 shares of Beacharmar Company stock were issued to B. T. Van Housen in consideration of the transfer by him of investment securities and other property having a fair market value of $318,900, and that the said 1,810 shares of stock were issued to Mrs. C. V. H. Warren in consideration of the transfer by her of investment securities and other property having a fair market value of $181,000.

The securities and property shown by the records of the Beacharmar Company to have been received by it from B. T. Van Housen and Mrs. C. V. H. Warren in consideration of the issuance to them of the capital stock of the Beacharmar Company were the same securities and property which were previously owned by the Steuben County Company. Said securities and property were never in the physical possession of B. T. Van Housen and Mrs. C. V. H. Warren, the transfer to Beacharmar Company having been made direct from Steuben County Company pursuant to the consent of B. T. Van Housen and Mrs. C. V. H. Warren.

The first tax return of Beacharmar Company was filed for the period January 1, to December 31, 1923, which tax return reflected the taxable income including interest and dividends received during the entire year from 1923 from securities aggregating approximately $500,000 and owned by Steuben County Company prior to December 30, 1922.

**1046**

The fair market value of 3,189 shares of common stock of Beacharmar Company received by B. T. Van Housen was not less than $318,900 on July 9, 1923, and on November 24, 1924.

The fair market value of the 1,810 shares of common stock of Beacharmar Company received by Mrs. C. V. H. Warren was not less than $181,900 on July 9, 1923, and on November 24, 1924.

The fair market value of the assets of Beacharmar Company on July 9, 1923 and November 24, 1924 was not less than $500,000.

B. T. Van Housen died on or about August 1, 1921 [1931]. Homer S. Warren and Charlotte V. H. Warren, as administrators of his estate, were on motion of respondent, and granted by the Board, substituted in place and stead of B. T. Van Housen to prosecute the appeal originally filed by B. T. Van Housen.

There were also received in evidence certain joint exhibits and other exhibits. These consisted of portions of the minute book of the Steuben County Wine Co., portions of the minute book of the Beacharmar Co., the corporation income tax returns of the Steuben County Co. for 1922 and 1923, and a copy of the notice of deficiency mailed to Mrs. C. V. H. Warren. All these exhibits we incorporate herein by reference.

The petitioners admit that the decision of the Board in *Steuben County Wine Co.*, 14 B. T. A. 746, that there are additional taxes due from the Steuben County Wine Co. for the year 1919 in the amount of $58,633.95, is binding upon them. To the effect that such prior decision is binding upon them, see *Jahncke Service, Inc.*, 20 B. T. A. 837, the appeal from which to the United States Circuit Court of Appeals for the Fifth Circuit was dismissed for lack of prosecution on February 10, 1933; and *J. E. Duval*, 21 B. T. A. 1357; affirmed on another issue in *Duval* v. *Commissioner*, 57 Fed. (2d) 496.

The stipulated facts show that on or about December 17, 1923, the Steuben County Co. distributed to B. T. Van Housen, whose estate is prosecuting the appeal, Liberty bonds of a value of $74,015.78, and to the petitioner, Mrs. C. V. H. Warren, Liberty bonds of the value of $28,783.88. The petitioners admit their liability to the extent of these respective amounts. The respondent, in his notices of deficiency, seeks to hold each petitioner, Mrs. C. V. H. Warren and the estate of B. T. Van Housen, liable for the full amount of the additional tax of the Steuben County Wine Co., $58,633.95, plus interest. It will be seen that by the admission of the estate of B. T. Van Housen, such estate is liable for the full amount asserted by the respondent, with the probable exception of some of the interest. However, in his brief the respondent states that since it is not known to what extent the Government will succeed in collecting the tax and interest from the estate of B. T. Van Housen, the Government is desirous of securing a determination as to whether there is any

liability of the petitioner, Mrs. C. V. H. Warren, as a transferee of the assets of the Steuben County Wine Co. in excess of her admitted liability, $28,783.88. Under the pleadings it remains to be determined whether this is the full extent of her liability as a transferee, and whether $74,015.78 is the full extent of the liability of B. T. Van Housen as transferee for which his estate is now liable.

It is the contention of the respondent that as of December 30, 1922, the petitioner, Mrs. C. V. H. Warren, received assets of the Steuben County Co. of a value of five eighteenths of $500,000, or approximately $138,000. She, on the other hand, contends that the assets of such company were not transferred to the stockholders, of which she was one, but were transferred to a new company, the Beacharmar Co., and that such company is the transferee which is liable for the tax. At the outset it must be clearly understood that the Beacharmar Co. is not a party to this proceeding, and we have no jurisdiction to determine whether or not it is liable as a transferee.

A brief resume of the facts is helpful in understanding this issue. On December 29, 1922, the stockholders of the Steuben County Co. (the former name being Steuben County Wine Co.), who were B. T. Van Housen, Mrs. C. V. H. Warren, and A. R. Martin (the last named finally holding one qualifying share), held a meeting at which it was resolved that the business be discontinued and fully liquidated at the close of business on December 30, 1922. It was resolved further that the stockholders request and recommend to the board of directors that such board of directors declare a final liquidating dividend, under and by virtue of which all the remaining assets of the corporation of every kind and nature would be distributed and turned over to the stockholders in proportion to their stockholdings. At a special meeting of the directors of the company held December 29, 1922, the directors being B. T. Van Housen, Mrs. C. V. H. Warren, and A. R. Martin, it was resolved that the business should be permanently discontinued and fully liquidated, and that all the assets of every kind and nature be distributed to the stockholders. It was therein provided, however, that the corporation should remain in existence for the purpose of settling its income, excess and war profits tax matters. In its return filed for the year 1922 the Steuben County Co. stated that its business had been liquidated. It was further stated that its capital and surplus had been liquidated in full. It was shown therein that all the corporate assets of the company in the amount of $661,459.95 had been distributed at December 30, 1922. The books of account of the Steuben County Co. show a distribution in liquidation of all the corporate assets of the company to its two stockholders, B. T. Van Housen and Mrs. C. V. H. Warren, on December 30, 1922. The fair market value

of the total assets of the Steuben County Co. as of December 30, 1922, was not less than $500,000. The records of the Steuben County Co. show that B. T. Van Housen was to receive thirteen eighteenths thereof, and that Mrs. C. V. H. Warren was to receive five eighteenths. The stipulated facts show, however, that neither petitioner Mrs. C. V. H. Warren nor petitioner B. T. Van Housen ever had physical possession of these assets with the exception of the Liberty bonds referred to hereinabove.

The Beacharmar Co. was organized July 9, 1923, the incorporators being B. T. Van Housen, Mrs. C. V. H. Warren, and Robert M. Todd. B. T. Van Housen owned 3,189 shares, Mrs. C. V. H. Warren owned 1,810 shares, and Robert M. Todd owned one share, which was a qualifying share. The stock certificates were issued to them on November 24, 1924. The directors were the same as the stockholders. The books of account of the Beacharmar Co. show that 3,189 shares of stock of the company were issued to B. T. Van Housen in consideration of the transfer by him of investment securities and other property having a fair market value of $318,900, and that 1,810 shares of stock of the company were issued to Mrs. C. V. H. Warren in consideration of the transfer by her of investment securities and other property having a fair market value of $181,000. The stipulated facts show that this property was the property which was previously owned by the Steuben County Co. and that it was transferred direct to the Beacharmar Co. by the Steuben County Co. pursuant to the consent of B. T. Van Housen and Mrs. C. V. H. Warren.

It is the contention of the respondent that the fact that the petitioners did not actually physically receive the properties is not conclusive of the question, it being sufficient that they were entitled to receive the same.

The petitioners, as stated, contend that the party liable as transferee is the Beacharmar Co., contending that the minutes covering the declaration of the liquidating dividends were inconsistent with the procedure which was actually followed in organizing the Beacharmar Co. and transferring to it the assets of the Steuben County Co. The petitioners point to the fact that the first corporation income tax return of the Beacharmar Co. was filed for the period January 1 to December 31, 1923, and that such tax return reflects the taxable income, including interest and dividends received during the entire year 1923 from securities aggregating approximately $500,000, which were owned by the Steuben County Co. prior to December 30, 1922, and contend that this substantiates the fact that the securities were never distributed to the stockholders of the Steuben County Co. The petitioners also point to the fact that the stock-

holders of the Steuben County Co., on June 19, 1923, held a meeting at which it was resolved to decrease the capital stock from $800,000 to $10,000. Petitioners contend that the fact that this stock was not surrendered prior to this date further proves that there was no distribution of assets to the stockholders.

The petitioners contend that where one corporation transfers its assets to a new corporation in exchange for stock of the latter which is issued directly to the stockholders, leaving the transferor without assets to satisfy its creditors, the new corporation is liable to the creditors of the old to the extent of the value of the property received, citing *Woodley Petroleum Co.*, 16 B. T. A. 253; *Concrete Industries Co.*, 19 B. T. A. 655; *Gideon-Anderson Co.*, 20 B. T. A. 106; and *Wayne Body Corporation*, 22 B. T. A. 401. Petitioners also contend that the new corporation is also liable in the case where it delivered stock to the old corporation which later distributed the same to its stockholders, the reason being that creditors of the old corporation can not be required to look alone for satisfaction to the stock and bonds which were substituted for the real tangible assets of the old corporation. However, as stated hereinabove, the Beacharmar Co. is not before us and we have no jurisdiction of it, and specifically do not decide whether or not it is liable as a transferee. Furthermore, whether or not it is liable is not determinative of the question here presented as to whether the petitioners are liable as transferees.

In *E. H. Dobrin*, 27 B. T. A. 611, we held liable, as a transferee, a stockholder of the transferor corporation. There the old corporation had sold its assets to another corporation for shares of the latter's capital stock, which shares were issued directly to the stockholders of the old corporation. There, as here, the shares had a value in excess of the deficiency in question. We there stated in part:

\* \* \* That procedure was nothing more nor less than a distribution, by shortcut methods, of the assets received by the Arcade Company in exchange for the property which it sold. It is well settled that where a corporation leases its property and the rental price is paid directly to its stockholders, such payment constitutes taxable income to the corporation. *United States v. Western Union Telegraph Co.*, 19 Fed. (2d) 157; affd., 50 Fed. (2d) 102; *Rensselaer & S. Ry. Co. v. Irwin*, 249 Fed. 726; certiorari denied, 246 U. S. 671. The same principle was upheld in *Old Colony Trust Co. v. Commissioner*, 7 B. T. A. 648; affd., 279 U. S. 716.

We think that principle applies in the present proceeding. The decision cited by petitioner in support of his view, *Signal Gasoline Corp.*, 25 B. T. A. 532, is not in point, for the question here raised was not in issue in that case. We conclude, therefore, that the stock issued by the Burroughs Company in exchange for the stock in trade of the Arcade Company constituted assets of the latter, and petitioner, as a distributee of those assets, became a transferee in respect to them.

To similar effect are *Fairless* v. *Commissioner*, 67 Fed. (2d) 475, affirming *B. F. Fairless*, 19 B. T. A. 304; *Estate of John W. Rapp*, 24 B. T. A. 1061; *Fifty-Three West Seventy-Second Street, Inc.*, 23 B. T. A. 164; and *Grand Rapids National Bank*, 15 B. T. A. 1166.

The stipulated facts show that the fair market value of the 3,189 shares of common stock of the Beacharmar Co. received by B. T. Van Housen was not less than $318,900 on July 9, 1923, the date of organization of the Beacharmar Co. and November 24, 1924, the date when its stock certificates were issued, and that the fair market value of the 1,810 shares of common stock of the Beacharmar Co. received by Mrs. C. V. H. Warren was not less than $181,000 on the same dates.

Whether there was here a transfer by the Steuben County Co. of its assets direct to the Beacharmar Co., or whether there was a transfer of the assets first to the stockholders of the Steuben County Co. and thence to the Beacharmar Co., is immaterial and we therefore find it unnecessary to determine this question. In any event the stockholders, having received property of a value in excess of the liability herein in question, are severally liable in equity to the full extent of the amount asserted against them. *Phillips* v. *Commissioner*, 283 U. S. 589.

We hold that Mrs. C. V. H. Warren and the estate of B. T. Van Housen are each liable for the full amount of the liability asserted by the respondent.

*Decision will be entered for the respondent.*