## THOMAS v. WHISENANT et al.
### No. 3722.

Court of Civil Appeals of Texas. El Paso.

Oct. 6, 1938.

Rehearing Denied Oct. 27, 1938.

Clyde O. Eastus, U. S. Atty., John A. Erhard, Asst. U. S. Atty., and J. L. Backstrom, Sp. Atty., for the Bureau of Internal Revenue, all of Dallas, for plaintiff in error.

M. N. Chrestman and L. E. Elliott, both of Dallas, for defendants in error.

WALTHALL, Justice.

This case is before this court on a writ of error from the judgment of the District Court of Dallas County, Texas, 95th Judicial District, in its judgment of December 7, 1936, denying the claim of the Collector for taxes alleged to be due the United States of America.

The plaintiff, W. A. Thomas, is the Collector of Internal Revenue for the United States, for the Second District of Texas, at Dallas. The defendant Herbert W. Whisenant is Receiver of all the assets of John W. Hooser, appointed by the above-entitled District Court on September 9, 1931, and qualified as such on September 10, 1931. The Collector of Internal Revenue will be hereinafter referred to as the plaintiff, and the Receiver as the defendant.

The defendant was appointed receiver of all the properties of John W. Hooser in a proceeding in the 95th Judicial District Court, Dallas County, Texas, instituted September 9, 1931, upon the original petition of the Fidelity Oil and Royalty Company et al. against John W. Hooser, defendant. The plaintiff alleged an interest in and a lien upon the assets of John W. Hooser, and also set out that there were various and sundry creditors secured and unsecured of John W. Hooser, and applied for the appointment of a receiver. The defendant John W. Hooser joined in that application. The Receiver continued to hold and operate the properties of John W. Hooser until January 30, 1935, when he sold the said properties under the orders of the court to Clyde H. Alexander and C. P. Quinlan. Upon the application of the Receiver on September 8, 1934, by order entered on that date the administration of the estate of John W. Hooser by said Receiver was continued until further orders of the court.

Numerous interventions were filed by secured and unsecured creditors of John W. Hooser, but all of these interventions, exclusive of the claim of the United States, were either settled by agreement or by judgment in that proceeding, or their rights followed the properties sold by the Receiver.

The Collector filed claims for income taxes assessed against the Receiver for the years 1933 and 1934 based upon income from the properties in the hands of the Receiver. The Receiver filed objections to the claims of the Collector, setting up that he was not liable to the United States for income taxes on the ground that he did not have in his possession all the properties of the owners thereof, and also contesting certain items of income which the Commissioner of Internal Revenue had included in his taxable income for said years.

A hearing was held with respect to the Collector's claims and the objections thereto on December 7, 1936, on which latter date the Court rendered judgment against the Collector, to which the Collector duly excepted and gave notice of appeal and duly filed this appeal to the Court of Civil Appeals.

Questions Presented: Whether the Receiver is liable for income taxes for the years 1933 and 1934. If liable, whether certain items of income derived from oil produced from the properties in defendant's possession and designated as oil payments were the Receiver's taxable income.

The Receiver was authorized to continue, manage and conduct the business of the defendant until further order of the court and given full power to manage, control and operate all the properties of the defendant, and was authorized to employ managers, agents and employees and others necessary in the management, conduct and control of the defendant's business, and was also authorized to prosecute, defend, compromise and adjust suits in which the defendant might be interested or necessary parties, and provided that all creditors, royalty owners, claimants of interests and/or royalties, claimants of oil and gas and claimants of rights or interests and possession and/or the right to operate any of the properties of the defendant, were enjoined or restrained from taking any action with respect to the properties of the defendant.

### Opinion.

Upon the above statement of the facts plaintiff in error submits that the income from the production of oil from certain property held by the Receiver which was paid to Eaton and others in accordance with a settlement with the Receiver was taxable income of the Receiver and should be included in his income tax returns for the years 1933 and 1934.

Section 142 of the Revenue Act of 1932 provides (26 U.S.C.A. § 142):

*"Fiduciary returns. (a) Requirement of return.* Every fiduciary (except a receiver appointed by authority of law in possession of part only of the property of an individual) shall make under oath a return for any of the following individuals, estates, or trusts for which he acts, stating specifically the items of gross income thereof and the deductions and credits allowed under this title."

Article 744 of Treasury Regulations 77 provides:

*"Return by receiver.* A receiver who stands in the stead of an individual or corporation need not. If the receiver acts for an individual the return shall be on Form 1040 or 1040A. When acting for a corporation a receiver is not treated as a fiduciary, and in such a case the return shall be made as if by the corporation itself. (See Section 52 and Articles 391 and 392). A receiver in charge of the business of a partnership shall render a return on form 1065. A receiver of the rents and profits appointed to hold and operate a mortgaged parcel of real estate, but not in control of all the property or business of the mortgagor, and a receiver in partition proceedings, are not required to render returns of income. In general, statutory receivers and common law receivers of all the property or business of an individual or corporation must make returns. (See also Sections 147 and 148(a) and Articles 811–831)."

In making the findings of fact the trial court observed that the controlling facts are almost entirely without dispute and proved by written instruments. In making the fact findings the court grouped the findings on each point raised and stated the law conclusions thereon. The court's findings are at much length, and we will as briefly as we can state them here.

The receiver contended that he was not required to make return for the years 1933 and 1934 because he was in possession of a part only of the property of the owners. The Collector denied the above contention of the receiver and contended that the receiver was a fiduciary, holding "income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests," and therefore was required to make return by 26 U.S.C.A. § 161.

On the above contention the court found: On September 9, 1931, Whisenant was ap-

pointed receiver of all the property of Hooser situated in Texas, and particularly in Rusk, Austin and Smith Counties. The Receiver took into his possession certain premises in Rusk County upon which Hooser had oil and gas leases, indicating them, and known in the receivership as Eaton A lease, Eaton B lease, Eaton C lease, McElroy lease and Jones lease, and stating the acreage in each lease. These leases were operated by the Receiver during 1933 and 1934, under the orders of his appointment. An income tax report for 1933 and 1934 was made by the Receiver.

On July 2, 1932, Hooser conveyed all of the above properties to B. A. LaSelle subject to the receivership proceedings, and LaSelle, in turn, on March 22, 1934, conveyed the same properties to Balco Oil Corporation, subject to the same conditions.

Hooser made a tax return to the United States Government for the years 1933 and 1934.

It was agreed that LaSelle owned substantial properties during 1933 and 1934, and made an income tax return for these years. It was also agreed that Balco Oil Corporation had substantial properties from the time of its acquisition of these properties on March 22, 1934, and during the remainder of that year, and that it made a return for 1934.

Early in 1936, the Collector of Internal Revenue assessed against the Receiver $9,-842.60 as additional income tax due for 1933, and $18,523.73 for the year 1934. These assessments, with interest, constitute the claim of the Collector.

The court concluded from the above as a matter of law: "That, inasmuch as the Receiver was in possession of a part only of the property of the owner during the years 1933 and 1934, he was not required to make an income tax return on the property. 26 U.S.C.A. § 142."

Facts pertinent to the Collector's claim of fiduciary under 26 U.S.C.A. § 161, the court found:

On May 9, 1932, the Receiver obtained an order authorizing settlement with G. W. Eaton and others of a suit for forfeiture of the Eaton leases for breach of conditions, in which settlement Eaton was to receive $70,000 in oil payments to be paid out of one eighth of seven eighths of the oil produced.

Prior to 1933 suit was instituted by T. S. Pennebaker and others, in causes No. 51

and No. 9238, in the District Court of Rusk County, to recover an interest in the premises known as Eaton B. Cause No. 51 was dismissed on April 17, 1934. The final disposition, if any, of cause No. 9238 is not shown. However, after the filing of these suits the Receiver obtained from plaintiffs a lease covering any interest they might obtain in the land in question as a result of the suit.

The court found there was litigation over the McElroy tract enjoining plaintiffs in a suit in Rusk County from prosecuting their suits, stating the cause; that sundry claims were filed in this receivership proceeding requiring reference to a Master for findings, the claims shown by recapitulation of the Master and final order of the court classifying, allowing and disallowing claims.

The court concluded as a matter of law that the facts found do not constitute the Receiver a fiduciary holding for unascertained persons within the meaning of 26 U.S.C.A. § 161, under North American Oil Consolidated v. Burnet, Commissioner, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Commissioner v. Owens, 10 Cir., 78 F.2d 768.

Facts with reference to oil payments: The court divided the oil payments assessed against the Receiver as income, and which he challenged here, into three classes:

A. The $70,000 oil payment relinquished by Hooser and the Receiver to Eaton in the settlement, approved by this (trial) court on May 9, 1932, of Eaton's claim for forfeiture of lease, the oil payment out of one eighth of seven eighths of the oil produced from Eaton A, B, and C and Jones leases, and amounting during 1933 to $16,059.89, and in 1934 to $19,280.47.

The court concluded that the foregoing oil payment, under United States v. Looney, 5 Cir., 29 F.2d 884, was not income to the Receiver.

B. The second class of oil payments derived from the premises during 1933 and 1934 were those involved in the assignments of the oil leases, to-wit, assignment by Cranfill, Reynolds Company et al. to Hooser, May 14, 1931; assignment by W. L. Goldson and others to Grady Vaughn, April 16, 1931; and assignment from Geo. D. Stevens and others to John Hooser, June 2, 1931; each assignment reciting the consideration and how paid. During the Receiver's operations division orders were signed by all parties interested in the oil produced under the leased premises, and the

pipe-line company taking the oil accounted direct to the holders of said assignments for the value of the oil. The court found that the payments were never received by nor came into the hands of the Receiver, except in one instance, stating the circumstance.

The trial court concluded that the foregoing oil payments were not income to the Receiver, under Commissioner v. Fleming, 5 Cir., 82 F.2d 324.

C. The third class of oil payments comprise the conveyances of oil made by the Receiver in consideration for drilling and equipping wells on and improving leases. The court concluded that these items were income to the Receiver and properly included in the assessment, if the Receiver was obliged to make a return and pay a tax.

Section 142 of the Revenue Act of 1932, quoted above, provides that every fiduciary (except a receiver appointed by authority of law in possession of part only of the property of an individual) shall make a return of gross income thereof; and Article 744, Treasury Regulations 77, provides that a receiver who stands in the stead of an individual or corporation must render a return, but a receiver of only a part of the property of an individual or corporation need not.

Appellant makes the contention that the conveyance from Hooser to LaSelle of date July 2, 1932, did not convey Hooser's interest in said property; that it did not purport to convey all the property in the Receiver's possession. It recites that Hooser, the present owner of the several leases, interests and rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign and convey all rights, titles and interests of the original lessee and present owner in and to said several leases and rights thereunder insofar as it covers the above described several tracts of land, together with all rights or reversion and reversionary interests, together with all personal property used or obtained in connection therewith, to LaSelle and his heirs and assigns, the conveyance subject, however, to the proceedings in receivership then pending in cause No. 95102, in Dallas County; that, for the same consideration, Hooser covenants with LaSelle that he is the owner of the said several leases, rights and interests thereunder and has the right to convey same, subject to the receivership proceedings, and that the rights, interests and properties are free from all liens except as disclosed in the receivership proceedings.

On March 22, 1934, LaSelle made a similar conveyance of the same properties to Balco Oil Corporation. By letter, the Commissioner of Internal Revenue, or his deputy, advised the Receiver that he was in error in making any returns for 1933 and 1934 and suggested that a refund claim be filed. Without quoting the letter, the advice is based on the above conveyance of July 2, 1932, of Hooser's interest to LaSelle; and because the Receiver was not standing in their stead and was not required to file a return, and referred to Article 744 of Regulations 77 above set out. It seems sufficiently clear that during 1933 and 1934 Hooser owned nothing in the hands of the Receiver.

In North American Oil Consolidated v. Burnet, Commissioner of Internal Revenue, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, the Supreme Court held that the income from oil property, the title to which was in litigation between the Corporation and the United States, was not taxable to a receiver appointed to operate the property and hold the net income pending determination of the suit for title, where the Corporation had other properties and business. The court says [page 615]: "The language of [Section 13(c) Revenue Act 1916], contemplates a substitution of the receiver for the corporation; and there can be such substitution only when the receiver is in complete control of the properties and business of the corporation. Moreover, there is no provision for the consolidation of the return of a receiver of part of the corporation's property or business with the return of the corporation itself. It may not be assumed that Congress intended to require the filing of two separate returns for the same year, each covering only a part of the corporate income, without making provision for consolidation so that the tax could be based upon the income as a whole."

We have considered other propositions not discussed and they are overruled.

The case is affirmed.